LOTTINGER, Judge.
This is an action in tort arising out of the rear end collision of a school bus by another school bus. From a judgment in favor of the defendant, the plaintiff has appealed. The Trial Court assigned written reasons for judgment, which because of their thoroughness we quote as follows :
“This action arose out of an accident which occurred in the City of Houma, La., on June 3, 1965 and involved two school busses.
The bus, owned and driven by plaintiff, Jimmie J. Dupre, for the Lafourche Parish School Board was being driven in a southerly direction on East Park Avenue when it came to a stop at a barricade in his lane, and was waiting for oncoming traffic in his left lane to pass so he could proceed around the barricade.
*392 A bus driven by Morris J. Blanchard and belonging to the Terrebonne Parish School Board was immediately behind the Dupre bus, and, being unable to stop, ran into the rear end of the Dupre bus, damaging it slightly, and allegedly causing injuries to plaintiff, for which he claims damages.
Blanchard is deceased and originally American Motorists Insurance Company, insurer of the Terrebonne Parish School Board, was made sole defendant. By supplemental and amending petition filed Sept. 2, 1966, ‘The State of Louisiana through its special agency, the Terrebonne Parish School Board’, was also made defendant.
Apparently in response to Exceptions of No Right or Cause of Action filed by the State of Louisiana, on September 27, 1966, plaintiff, by motion filed March 17, 1967, removed ‘the state of Louisiana, through its Special Agency, the Terre-bonne Parish School Board’ as a defendant in the case.
Since plaintiff was receiving compensation from the Employers Liability Assurance Corporation, the compensation insurer of the Lafourche Parish School Board, a petition of intervention was filed by said compensation insurer to recover any amounts paid by it to plaintiff in the event of his recovery from defendant.
Plaintiff has alleged, as the whole and proximate cause of the accident, the negligence of Morris J. Blanchard, the Terre-bonne school bus driver; and in the alternative, by supplemental and amending petition, the negligence of the Terrebonne Parish School Board (which we summarize) as consisting in a failure to properly install, maintain, repair, service and inspect the braking system on the school bus in question, and a failure to properly inspect, test, service and repair its buses.
By virtue of this alleged negligence of the School Board, plaintiff seeks to hold the School Board’s insurer, American Motorists Insurance Co., liable.
In our opinion, there is a preponderance of evidence pointing to the conclusion that the accident was caused neither by the negligence of the now deceased Morris J. Blanchard, driver of the Terrebonne School Board bus, nor by any negligence of the School Board; but rather as a result of a latent defect in the braking system which was not readily discoverable under normal and standard inspection procedures, and could not have been reasonably anticipated.
The evidence indicated that the braking system failed to function when Blanchard attempted to bring his bus to a stop behind the Dupre bus which was already stopped. Immediately after the accident, the investigating state trooper checked the brakes, and testified that the brake pedal ‘went to the floor board’.
Mr. Delmar Crochet, who was shop foreman for the Terrebonne Parish School Board at the time of the accident, testified that the brake failure was due to a break in the steel pressure line between two wheel cylinders. He stated that ‘wheel cylinder kits’ had been replaced on the bus on June 2, 1965, the day prior to the accident; but that the mechanics who did that work could not have discovered the faulty line because
‘It was pitted on the inside and the rust had broken on the inside where the mechanic who had done the work prior to that could not have seen it.’
He also stated that he had seen this type of break ‘three times at the most’ during his 19 years with the School Board.
Mr. Norman Falcon, a shop mechanic for the Terrebonne School Board testified that he had done repair work on the Terre-bonne bus after the accident, as follows:
‘Well, the right rear wheel had a lot of oil, brake fluid, so I pulled it off first, and I found the brake line in between the two wheel cylinders — you have dual wheel cylinders on the rear — you have a line that hooks the two cylinders together and that line was ruptured.’
*393 This same witness stated:
‘The line was ruptured. It had a pinhole like a rusted hole in it.’
When asked on direct examination whether 'It appeared to have rotted out from the inside?’ the witness replied ‘it could have.’ On cross examination the witness was asked whether he had cut the line open (in the light of his answer that it coiild have rotted from the inside) and candidly stated that he had not. He just ‘took it an changed it’. When asked how he could tell whether the pitting was from the inside or from the outside, he frankly answered:
T could not tell. I said it could have started, the rust pit could have started on the outside or could have started from the inside.’
In connection with inspection procedures, Falcon also testified that the braking system
“ * * * is normally checked about once a month. They put it on a rack and its a visible check. You can’t hardly detect whether the line is bad or good, but if you put this 40 pounds pressure normally if the line is bad it will show under this pressure, it will rupture under this pressure.’
Another mechanic, Gilbert C. Treagle, employed by the Terrebonne Parish School Board, testified he had worked on the bus in question on June 2, 1965, the day before the accident in response to a complaint by Blanchard that his brakes were low.
Treagle changed the wheel cylinders on the right rear wheel. He testified: ‘Well, after we put cylinders like that we have to bleed all the brakes’. Then the brakes were tested by the pressure machine and the bus was road-tested by Treagle and Crochet. The following indicates the results of the road test:
‘Q. How did you road test that bus?
A. Well, we usually go on Bayou Black road and come back.
Q. But I mean how do you use the brake, the braking system.
A. You go a good speed and put the brakes to be sure that it’ll stop even.
Q. How did it come out in the test?
A. Good.’
Subsequent testimony by this witness disclosed that he had gone to the scene of the accident, ascertained that the foot brakes were not working, and brought the bus in, using the emergency brakes. He also indicated that the emergency brakes were effective at a speed not in excess of 15 or 20 miles per hour.
There is no legally admissible testimony in the record which permits us to determine with certainty that Blanchard failed to use his emergency brake after discovering that his foot brake was inoperative — or even that he had time to do so. We conclude there is insufficient evidence to permit us to consider Blanchard negligent in that regard.
We are convinced from the evidence that the Blanchard bus was subject to frequent inspection and that necessary repairs were made to keep the braking system functioning properly. We also conclude that neither Blanchard nor the Terrebonne Parish School Board mechanics had any notice of the latent weakness of the brake line, nor could reasonable observation have given them any.
It is our opinion that the facts in this case are analogous to those presented in Cartwright v. Firemen’s Insurance Company of Newark, N. J. [La.App.] 213 So.2d 154, affirmed on certiorari in 254 La. 330, 223 So.2d 822, and that its rationale is applicable here: (223 So.2d 823-24)
‘The issue presented under these facts is whether an automobile owner is strictly and absolutely responsible for damages caused by a defect in his vehicle, regardless of the fact that he had no reasonable means of discovering such defect and had used every precaution to maintain the machine in a safe condition. *394 Otherwise stated, the question is: Is the automobile owner liable, when without fault, for damages resulting from a latent defect in his vehicle?
We have considered this issue but once before, when on an application for cer-tiorari, in a case in which the Court of Appeal for the Fourth Circuit adhered to the doctrine of no liability without fault; and it squarely held that proof that plaintiff’s damages were caused by a latent defect in defendant’s automobile relieved him of liability for the damages when it was shown that he used reasonable means to keep his vehicle in a safe working condition. [Delahaussaye] de la Houssaye v. State Farm Mutual Automobile Insurance Company, La.App., 202 So.2d 287. Therein, we denied cer-tiorari with the observation that “On the facts found by the Court of Appeal, there is no error of law in its judgment.” 251 La. 671, 205 So.2d 440.’
Therefore plaintiff’s petition will be dismissed.”
Therefore, for the above and foregoing reasons the judgment of the Trial Court is affirmed.
Judgment affirmed.